UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

MARC ST. PAUL,

           Petitioner,

   -vs-

ISRAEL RIVERA, Superintendent,
Coxsackie Correctional Facility

           Respondent.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**DECISION AND ORDER**

**No. 05-CV-6545**

## I. <u>INTRODUCTION</u>

Petitioner, Marc St. Paul ("Petitioner" or "St. Paul"), timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his custody. Petitioner was convicted, following a jury trial, on November 25, 2002, in New York Supreme Court, Chemung County (Buckley, J.), of robbery in the second degree (N.Y. Penal Law ("Penal Law") §§ 20.00, 160.10 (2)(b)) and unauthorized use of a motor vehicle in the third degree (Penal Law § 165.05). Petitioner's conviction was affirmed by the Appellate Division, Third Department, and the New York State Court of Appeals denied leave to appeal. <u>People v. St. Paul</u>, 3 A.D.3d 604 (3ʳᵈ Dept.), *leave denied*, 2 N.Y.3d 761 (2004).

## II. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

By indictment number 2004-249, petitioner was charged with three counts of robbery in the first degree (Penal Law 165.15), two counts of robbery in the second degree, and six counts of kidnapping in the second degree (Penal Law 135.20), arising out of

-1-

the following incident. On September 21, 2001, Autumn Milton ("Milton") permitted Petitioner and Douglas Lopez ("Lopez"), both of whom had been living with Milton for approximately one month, to use her car. (T.[1] 73-4). Milton called Petitioner several times to ask him to return the car, but Petitioner and Lopez did not return to Milton's house until the next morning. (T. 74-5). Milton's three children and two younger sisters were in the house at that time. (T. 76). When they entered the house, Petitioner sat on the couch with Milton in the living room, and Lopez went into the dining room where Milton could not see him. (T. 77). Milton asked Petitioner to give her the car keys and leave the house. (T. 77-8). Lopez then came in the living room, spoke to Petitioner, and asked Milton if she wanted them to leave. (T. 78). Milton said, "yeah," and Lopez left the room again and returned with a rifle. Id. Lopez then said, "It's not going down like that," and Milton grabbed her son and ran into the kitchen. (T. 80). Milton then called the rest of the children into the kitchen. Id.

Petitioner and Lopez then came into the kitchen and paced around talking to each other. Id. Then, Petitioner asked Milton to talk to him in the bathroom. (T. 81). Milton followed Petitioner to the bathroom and he told her that if she cooperated she and the children would not be hurt, at which point Lopez came into the bathroom and asked if they had a deal. (T. 82). Petitioner told

---

[1] "T." refers to the state court record.

Lopez he had not yet informed Milton of the "deal." (T. 83). Petitioner then told Milton that Lopez wanted money. Id. Milton said she did not have any money, and Lopez said he knew that she did. Id. At that point, Milton asked them if they would leave if she gave them money, and she went upstairs to get $500 that was in her bedroom. Id. She gave the $500 to Lopez, and Lopez asked her for her jewelry. (T. 84). Petitioner took off Milton's jewelry and gave it to Lopez. Id.

Petitioner and Lopez talked to each other, and then told Milton that they needed to tie up her and her children "for [their] safety." (T. 85). They forced Milton and her children upstairs and tried to tie up her son who began running around and "throwing a fit," at which point, Milton asked if she could tie up the children so that Petitioner and Lopez could leave. Id. Milton tied up her children with bed sheets, and then Lopez tied up Milton. (T. 88). Lopez put tape over the sheets to secure them. Id. Petitioner brought Milton a bowl because she was getting sick, and turned on music and a fan. (T. 90). Petitioner and Lopez then left in Milton's car. (T. 90-3).

After the two men left, Milton's daughter managed to break free and go across the street to call 911. (T. 90-1). When the police arrived, Milton also noticed that Petitioner and Lopez had taken a camcorder and a cordless phone. (T. 93). They had left the rifle in the living room. (T. 94). Petitioner was later

apprehended driving Milton's car with Lopez and two female passengers. (T. 172). Jewelry, money, ammunition, and a tape dispenser were found on Lopez's person, and the camcorder and cordless phone were found in the car. (T. 173, 186-7, 193, 237-40). Petitioner later told police that "things had gotten out of hand" and that he was "trying to get everybody in the house to chill out." (T. 267). He also told police that it was his idea to tie the children and Milton up so that no one would get hurt and so he and Lopez could leave the house. (T. 286).

Following a jury trial, Petitioner was convicted of robbery in the second degree[2] and unauthorized use of a motor vehicle in the third degree.[3] Petitioner made a motion to set aside the verdict pursuant to C.P.L § 330.30, arguing that the verdict was inconsistent because he was acquitted of third degree robbery[4] and one count of second degree robbery[5], but convicted of one count of second degree robbery; that the verdict was against the weight of the evidence; and that he was denied effective assistance of

---

[2] Penal Law § 160.10 (2)(b): forcible stealing where either Petitioner or another participant displayed what appeared to be a rifle. The trial court charged the jury with this offense as a lesser included offense of robbery in the first degree (Penal law § 160.15 (4)).

[3] The trial court charged the jury with unauthorized use of a motor vehicle as a lesser included offense of second degree robbery, for the forcible theft of a motor vehicle. Penal Law § 160.10 (3).

[4] Penal Law § 160.05: forcible stealing. The trial court charged the jury with third degree robbery in place of one count of first degree robbery, because the People had not proven that the rifle was loaded.

[5] Penal Law § 160.10 (1): forcible stealing while being aided by another person actually present.

counsel. See Answer[6], Exhibits A-C. By Memorandum and Order, dated November 19, 2002, Chemung County Court denied Petitioner's motion because Petitioner did not object to the verdict prior to the jury being discharged; the verdict was not against the weight of the evidence; and Petitioner received effective assistance of counsel, despite counsel's failure to object to the allegedly inconsistent verdict. See Answer, Exhibit D. The Court reasoned that having secured acquittals on nearly all of the counts in the indictment, there was a "distinct possibility that some, if not all, of those acquittals [would] be transformed into guilty verdicts" had counsel made a timely objection to the verdict. Id.

Petitioner then appealed his conviction to the Appellate Division, Third Department, arguing (1) the verdict was inconsistent; (2) ineffective assistance of counsel[7]; and (3) the evidence was insufficient to support the conviction for robbery in the second degree; and (4) the conviction was against the weight of the evidence. See Answer, Exhibit E. The Appellate Division affirmed his conviction, holding that Petitioner's claim that the verdict was inconsistent was unpreserved for appellate review, but that "the result would be no different if we were to consider it in

---

[6] Respondent's Answer to St. Paul's petition for a writ of habeas corpus and accompanying exhibits.

[7] Petitioner asserted that counsel was ineffective for (1) failing to adequately prepare for trial (2) failing to move to suppress physical evidence (3) failing to make proper objections at trial and (4) failing to object to the allegedly inconsistent verdict.

the interest of justice because we would conclude that the jury did not reach and inherently self-contradictory verdict." St. Paul, 3 A.D.3d 604, 605-6 (3rd Dept. 2004). The Appellate division also held that the evidence was legally sufficient to support the robbery conviction, the verdict was not against the weight of the evidence, and Petitioner received "meaningful and effective representation". Id. at 606. With respect to his claim for ineffective assistance of counsel based on counsel's failure to object to the inconsistent verdict, the Appellate Division specifically held that counsel's strategic choice to not object was reasonable because had the charges been resubmitted to the jury, the jury could have reversed its decision to acquit Petitioner on some of the charges. Id.

Petitioner made a motion to reargue his appeal because the Appellate Division "misapprehended the relevant facts and misapplied the controlling case law in determining whether the verdict was inconsistent." See Answer, Exhibit I. The Appellate Division denied the motion. See Answer, Exhibit J. The New York State Court of Appeals denied further review. People v. St. Paul, 2 N.Y.3d 765 (N.Y. 2004).

Petitioner then filed a petition for a writ of error coram nobis in the Appellate Division, arguing ineffective assistance of appellate counsel because counsel failed to argue that the trial court improperly admitted a statement he made to police. See

Answer, Exhibit M.  The Appellate Division denied his petition, and the Court of Appeals denied further review.  See Answer, Exhibit N and P.

### III.  <u>GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW</u>

**A.    The AEDPA Standard of  Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254 (d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v.</u>

Herbert, 342 F. 3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-410. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be

overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State..." 28 U.S.C. §2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is

actually innocent of the crime for which he has been convicted."
Id. (Citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v.
Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the
independent and adequate state law ground doctrine applies to bar
consideration on federal habeas of federal claims that have been
defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting
Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by
Second Circuit), the Second Circuit has observed that "it is not
the case 'that the procedural-bar issue must invariably be resolved
first; only that it ordinarily should be[,]'" (quoting Lambrix, 520
U.S. at 525 (stating that bypassing procedural questions to reach
the merits of a habeas petition is justified in rare situations,
"for example, if the [underlying issues] are easily resolvable
against the habeas petitioner, whereas the procedural bar issue
involved complicated issues of state law")).

## IV. PETITIONER'S CLAIMS

### A. Insufficient Evidence

Petitioner first claims that there was insufficient evidence
to support his conviction for robbery in the second degree.[8] Pet.

---

[8] It is unclear whether Petitioner claims that there was insufficient
evidence to support his conviction for unauthorized use of a motor vehicle.
Pet. Mem. at 48. In any event, this claim is unexhausted, but procedurally
barred because Petitioner could have raised this issue on direct appeal, but
he did not. See Grey v. Hoke, 933 F.2d 117, 120-21 (2nd Cir. 1991). Petitioner
has failed to establish the requisite cause and prejudice, or a fundamental
miscarriage of justice to overcome this procedural bar, and this claim is
denied. See Wainright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v.

Mem. at 18-52[9]. Petitioner argues that the prosecution proved only that he was present at the scene, but that there was no evidence that Petitioner took any action to further the crime or that he shared Lopez's intent to commit the crime. Pet. Mem. at 20. The Appellate Division addressed this claim on the merits and held, "viewing the evidence in the light most favorable to the People, we find it sufficient for a rational jury to conclude that defendant was not merely present, but intentionally aided Lopez in committing the crime of robbery in the second degree." St. Paul, 3 A.D.3d at 606, *leave denied* 2 N.Y.3d 765.

The standard of review for a federal habeas claim based on insufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). To determine the essential elements of the crime, the habeas corpus court must look to state law, see Jackson, 443 U.S. at 324; Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), and the evidence must be reviewed as a whole, see Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("Assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's

Whitley, 505 U.S. 333 (1992).

[9] "Pet. Mem." refers to St. Paul's Appendix and Memorandum in Support of his Petition for a Writ of Habeas Corpus.

assessments on both of these issues"). The court is not required to decide whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but whether any rational trier of fact could have found guilt beyond a reasonable doubt based on the evidence presented. See Jackson, 443 U.S. at 319. In making this assessment, a federal habeas court must "credit every inference that could have been drawn in the state's favor . . . whether the evidence being reviewed is direct or circumstantial." Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir. 1988), cert. denied, 488 U.S. 929 (1988).

In this case, Petitioner was convicted of robbery in the second degree pursuant to Penal Law §§ 20.00 and 160.10(2)(b), which respectively provide that, "when one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" and a person is guilty of robbery in the second degree "when he forcibly steals property and when...in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime...displays what appears to be a rifle." Petitioner claims that he did not intentionally aid Lopez in the commission of the crime. He argues that Lopez planned and executed the robbery on his own, and that he was

merely present at the scene. He cites his acquittal on other counts in the indictment as proof that his conviction for second degree robbery was unreasonable.[10] Petitioner also claims that the Appellate Division's characterization of Petitioner's role in the robbery was an unreasonable determination of the facts.

This Court finds that it was reasonable for the jury to conclude that Petitioner had committed second degree robbery pursuant to Penal Law §§ 20.00 and 160.10(2)(b). This Court also finds that the Appellate Division made a reasonable determination of the facts when it held that "the evidence established that [Petitioner] removed jewelry from the victim's person, told her nothing would happen to her children if she cooperated, devised a plan to tie up her and her children, and facilitated Lopez's getaway by driving the victim's car." See St. Paul, 3 A.D.3d at 605. Likewise, its holding that the evidence was sufficient to support Petitioner's conviction was not contrary to or an unreasonable application of clearly established federal law.

The record established that Petitioner arrived at Milton's home and would not leave after being asked. He spoke privately several times to Lopez who displayed a rifle and demanded money and jewelry from Milton. He aided Lopez by attempting to calm Milton down, taking off her jewelry and giving it to Lopez,

---

[10] As Petitioner recognizes in the Memorandum accompanying his petition, a claim for an allegedly inconsistent verdict is not basis for federal habeas relief. Dunn v. U.S., 284 U.S. 390 (1932); Harris v. Rivera, 454 U.S. 339 (1981).

suggesting that they should tie up Milton and her children, and driving the getaway car. (T. 73-94, 172). A rational trier of fact could reasonably conclude that Milton intentionally aided Lopez in the robbery, and that he was therefore criminally responsible. Therefore, this Court finds that there was sufficient evidence to support Petitioner's conviction for robbery in the second degree. His claim for habeas relief on this ground is denied.

## B. Ineffective Assistance of Counsel

### 1. Trial Counsel

Petitioner claims that he received ineffective assistance of trial counsel because counsel (1) was unprepared for trial; (2) failed to move to suppress physical evidence; (3) failed to make proper objections at trial[11]; and (4) failed to object to the inconsistency of the verdict. Pet. Mem. at 55. Petitioner raised these claims on direct appeal, and the Appellate Division held that he received "meaningful and effective representation." St. Paul, 3 A.D.3d 606, *leave denied* 2 N.Y.3d 761.

The Sixth Amendment to the Constitution provides that the

---

[11] To the extent that Petitioner claims he received ineffective assistance of counsel because counsel failed to object to a statement at Petitioner's Huntley/Wade hearing, which was allegedly a violation of New York's C.P.L. § 710.30 notice requirement, this claim is unexhausted, but procedurally barred because petitioner could have raised this claim on direct appeal, but he did not. C.P.L. § 440.10(2)(c); Grey 933 F.2d at 120-21. Petitioner has failed to establish the requisite cause and prejudice, or a fundamental miscarriage of justice to overcome the procedural bar. See Wainright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

accused in a criminal trial shall have the assistance of counsel for his defense. The right to counsel is fundamental to the criminal justice system; it affords the defendant the opportunity "to meet the case of the prosecution." <u>Strickland v. Washington</u>, 466 U.S. 668, 685 (1984). The appropriate Constitutional standard for assessing attorney performance is "reasonably effective assistance." <u>Strickland</u>, 466 U.S. at 687.

To demonstrate constitutional ineffectiveness, "[f]irst, the defendant must show that counsel's performance was deficient." <u>Id.</u>, 466 U.S. at 687. To determine whether a counsel's conduct is deficient, "[t]he court must...determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>, 466 U.S. at 690. In gauging the deficiency, the court must be "highly deferential," must "consider[ ] all the circumstances," must make "every effort...to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u>, 466 U.S. at 688-89. The Court must look at the "totality of the evidence before the judge or jury," keeping in mind that "[s]ome errors [] have...a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture." <u>Id.</u> at 695-96.

Second, a habeas petitioner must demonstrate "that there is

a 'reasonable probability' that, but for the deficiency, the outcome . . . would have been different[.]" <u>McKee v. United States</u>, 167 F.3d 103, 106 (2d Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 688). "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome," <u>Strickland</u>, 466 U.S. at 688; a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." <u>Id.</u>, 466 U.S. at 693. Thus, even serious errors by defense counsel do not warrant granting federal habeas relief where the conviction is supported by overwhelming evidence of guilt.

In this case, Petitioner claims that trial counsel was not prepared, that he failed to make proper objections at trial, and that he failed to make a motion to suppress physical evidence. Petitioner specifically cites trial counsel's statement to the Chemung County Court, on March 18, 2002, that he was unprepared for trial at that time, as proof that he received ineffective assistance of counsel. Pet. Mem. At 57. Petitioner has not identified what physical evidence should have been suppressed or what other errors counsel should have objected to, however, this court finds that trial counsel's performance was not deficient under <u>Strickland</u>. Additionally, Petitioner has not established that he was prejudiced by any alleged deficiency on the part of trial counsel, because he was acquitted of nearly all of the

charges in the indictment.

Trial counsel thoroughly cross-examined the prosecution's witnesses, sought suppression of Petitioner's statements in a pre-trial <u>Huntley</u>/<u>Wade</u> hearing, and gave opening and closing statements in which he argued that Lopez, not Petitioner, was the primary actor, that Petitioner did not share Lopez's intent to commit the robbery, and that Petitioner was merely present at the scene of the crime. Trial counsel also made a motion to dismiss the entire indictment and a successful motion to dismiss the most serious charge, first degree robbery, because the People had not proven that the rifle was loaded. With respect to trial counsel's statement to the court that he was unprepared on March 18th, this Court finds that counsel was adequately prepared by the actual date of trial, on May 8, 2002. For these reasons, the Appellate Division's holding, that Petitioner received meaningful and effective assistance of counsel, was not contrary to or an unreasonable application of federal law. Therefore, this Court finds that Petitioner received "reasonably effective" assistance of counsel under <u>Strickland</u>, and his claim for habeas relief on the first three grounds is denied.

With respect to Petitioner's claim that he received ineffective assistance of counsel because counsel failed to object to the verdict as inconsistent, this Court agrees with the Appellate Division, that Petitioner's claim lacks merit. The

Appellate Division held that trial counsel's failure to object to the verdict as inconsistent was reasonable in light of the possibility that the jury may have reversed its decision to acquit Petitioner of some of the charges if the case had been resubmitted for further deliberation. St. Paul, 3 A.D.3d 606. Petitioner has not shown that this was contrary to or an unreasonable application of clearly established federal law. Likewise, this was not an unreasonable determination of the facts under the circumstances. In fact, it is likely that Petitioner would have been prejudiced if counsel *had* made an objection to the verdict as inconsistent, because it is reasonable that the jury would have returned guilty verdicts on charges of which Petitioner had been acquitted. Therefore, this Court finds that Petitioner did not receive ineffective assistance and his claim for habeas relief on this ground is denied.

## 2. Appellate Counsel

Petitioner next claims that appellate counsel was ineffective by failing to raise the following issues on appeal: (1) that trial counsel's opening and closing statements rendered his assistance ineffective, and (2) that the jury instructions were erroneous. Pet. Mem. 64-67. Petitioner, however, did not raise either claim in his application for a writ of error coram nobis, or at any other time in state court, thus, his claims are unexhausted.

The AEDPA provides that an "application for a writ of habeas

corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); accord, e.g., Rhines v. Weber, 544 U.S. 269, 277 (2005). Neither the Supreme Court nor the Second Circuit has adopted a standard for district courts to exercise discretionary review. However, the majority of district courts in this circuit have followed a "patently frivolous" standard, Colorio v. Hornbeck, No. 05 CV 4984(NG)(VVP), 2009 WL 811588, at *3 (E.D.N.Y. Mar. 3, 2009) (citing Brown v. State of New York, 374 F. Supp.2d 314, 318 (W.D.N.Y. 2005)(citing Naranjo v. Filion, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr.16, 2003), while a minority of district courts have exercised § 2254(b)(2) discretionary review when "'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,'" Hernandez v. Lord, No. 00-CIV-2306, 2000 WL 1010975, at *4 n. 8 (S.D.N.Y. Jul. 21, 2000). Nevertheless, Petitioner's claims fail under either standard as they are both "patently frivolous" and entirely meritless. See Severino v. Phillips, No. 05 Civ. 475(DAB), 2008 WL 4067421, at *14 (S.D.N.Y. Aug. 25, 2008); Brown v. State, 374 F. Supp.2d at 318.

Strickland also applies to claims for ineffective assistance of appellate counsel. In addition, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a non-frivolous argument, for counsel does not have a duty to advance

-19-

every non-frivolous argument that could be made." <u>Mayo v. Henderson</u>, 13 F.3d 528 (2nd Cir.) <u>cert. denied</u>, 513 U.S. 820 (1994).

After review of Petitioner's argument that appellate counsel was ineffective for failing to present a claim for ineffective assistance of trial counsel, based on trial counsel's allegedly prejudicial opening and closing statements, this Court finds that Petitioner's has not established that appellate counsel was defective or that the outcome would have been different had appellate counsel raised this issue. Appellate counsel was not deficient because he omitted this claim, because he was not required to raise every argument that could have been raised. Petitioner has also not established that the outcome of Petitioner's appeal would have been different if counsel had raised this issue, because review of trial counsel's opening and closing statements reveals that trial counsel argued that Petitioner did not share Lopez's intent and that he was merely present at the scene of the crime, which is consistent with the defense theory of the case. Therefore, this Court finds that this claim is without merit and "patently frivolous."

Petitioner's claim that appellate counsel failed to raise the issue of allegedly erroneous jury instructions is also "patently frivolous" and without merit. Again, appellate counsel was not required to raise every potential issue on appeal, and, in this

case, appellate counsel raised the issues that their was insufficient evidence to support the verdict, that the verdict was against the weight of the evidence, and that the verdict was inconsistent. The Appellate Division found all three claims were without merit. St. Paul, 3 A.D.3d at 605-6. Petitioner has not established that appellate counsel was deficient for failing to raise the issue of erroneous jury instructions, where the factual circumstances underlying his claim were the same underlying the claims for insufficiency of the evidence and inconsistency of the verdict. This Court, finds that appellate counsel was not deficient for omitting this issue and, in any event, Petitioner has not shown that the outcome would have been different, because the Appellate Division fully examined his claims based on the sufficiency of the evidence and the allegedly inconsistent verdict. Therefore, Petitioner's claim is both "patently frivolous" and completely meritless, and his habeas petition is denied.

## V. CONCLUSION

For the reasons stated above, petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this Court concludes that the petition presents no federal

question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed. R. App. P. 22(b), this Court denies a certificate of appealability. The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962).

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           November 5, 2009